UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| REBECCA LOUDENBACK, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Cause No. 1:13-cv-902-WTL-TAB |
| | ) |
| CAROLYN W. COLVIN Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| **Defendant.** | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Rebecca Loudenback requests judicial review of the final decision of the Defendant denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). The Court rules as follows.

### I. PROCEDURAL HISTORY

Ms. Loudenback filed an application for DIB on April 29, 2010, alleging disability beginning May 7, 2009, due to fibromyalgia, polyarthritis, osteoarthritis, sacroiliitis, cervicalgia, scoliosis of the spine, irritable bowel syndrome, gerd, and migraine headaches. Her application was initially denied on March 27, 2010, and again upon reconsideration on September 28, 2010. She requested and was granted a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before ALJ Tammy H. Whitaker on November 1, 2011. Ms. Loudenback was represented by Robert Edwards, a non-attorney representative.[1] ALJ Whitaker issued her decision denying Ms. Loudenback's application on March 24, 2012. On April 3, 2013, the Appeals Council upheld the ALJ's decision and denied a request for review, thereby rendering the ALJ's decision the final decision of the Commissioner and subject to review by this Court.

---

[1] Ms. Loudenback is represented by an attorney on appeal.

## II. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

### III.  EVIDENCE OF RECORD

The evidence of record is aptly set forth in the parties' briefs and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

### IV.  THE ALJ'S DECISION

The ALJ determined at step one that Ms. Loudenback had not engaged in substantial gainful activity since May 7, 2009, the alleged onset date. At step two, the ALJ concluded that Ms. Loudenback had the following severe impairments:

> fibromyalgia; arthralgias; polyarthritis; osteoarthritis of the knees, feet, and hands; sacroilitis [sic]; cervacalgia; scoliosis; irritable bowel syndrome with abdominal pain, bloating, gas pain, and constipation; migraine headaches and tension headaches; right shoulder impingement; epicondilitis with joint pain and elbow tendinitis; anxiety; depression; history of endometriosis with menorrhagia, abdominal pain, cysts, and polyps; history of tremors; history of biliary colic and abdominal pain; hypothyroidism; sphincter of oddi dysfunction; history of chronic cholecystitis; history of gallbladder sludge; diffuse pain syndrome; arthralgias at multiple sites; shingles; degenerative joint disease of the right hand; joint pain of the fingers with tendronosis and osteoarthritis of the PIP joints; myofascial pain syndrome; restless leg syndrome; history of cerebral spinal fluid pleocytosis, inflammatory condition of uncertain etiology; numbness of the left arms, left second toe, and foot; old fragmentation of right anterior tibial tuberosity; generalized abdominal pain; and history of fatigue.

3

R. at 16-17. At step three, the ALJ determined that Ms. Loudenback's impairments, singly and in combination, did not meet or medically equal a listed impairment.

At step four, the ALJ determined that Ms. Loudenback had the residual functional capacity ("RFC") to perform sedentary work with the following restrictions:

> Sit 1 hour at a time; stand 45 minutes at a time; walk 30 minutes at a time; limited to work allowing this person to sit or stand alternatively; never push or pull hand/arm controls; never operate foot controls; never climb ladders, ropes, scaffolds, or stairs; occasionally climb ramps; occasionally balance and stoop; never crouch, kneel, or crawl; never reach overhead; occasionally finger, that is, fine manipulation; avoid moderate exposure to extreme cold, extreme heat, wetness, or humidity; avoid moderate exposure to irritants such as fumes, odors, dusts, and gases; avoid all exposure to unprotected heights and dangerous machinery; only occasional commercial driving; limited to work that allows 1 absence per month; limited to work that allows two unscheduled five minute breaks twice per week in addition to regularly scheduled breaks; work limited to simple, routine, and repetitive task in a work environment free of fast paces production requirements; and work limited to only simple, work related decisions with few, if any, work place changes.

*Id.* at 21-22. Given this RFC, the ALJ determined that Ms. Loudenback could not perform any of her past relevant work. Finally, at step five, taking into account Ms. Loudenback's age, education, and work experience, the ALJ determined that she could perform jobs existing in significant numbers in the national economy, including an election clerk, a call out operator, a dowel inspector, and a surveillance systems monitor. Accordingly, the ALJ concluded that Ms. Loudenback was not disabled as defined by the Act.

## V. DISCUSSION

Each of Ms. Loudenback's arguments is addressed below.

### A. Erroneous RFC

First, Ms. Loudenback argues that the ALJ failed to grant controlling weight to two treating physicians' opinions. A recent Seventh Circuit opinion described what is commonly referred to as "the treating physician rule":

4

> A treating physician's opinion is entitled to controlling weight if it is supported by medical findings and consistent with substantial evidence in the record. If this opinion is well supported and there is no contradictory evidence, there is no basis on which the administrative judge, who is not a physician, could refuse to accept it. But once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to consider.

*Bates v. Colvin*, 736 F.3d 1093, 1099-1100 (7th Cir. 2013) (internal quotation marks and citations omitted).

On May 3, 2011, Ms. Loudenback's neurologist, Dr. Caryn Vogel, completed a physical capacities evaluation. She noted that Ms. Loudenback could sit for three hours a day and stand or walk one hour a day; needed to alternate between sitting and standing throughout the day; could use her hands to grasp, but not push or pull, do fine manipulation, or repetitive motion tasks; could not use her feet for repetitive movements; could occasionally lift or carry up to five pounds, but never more; was unable to climb, balance, stoop, kneel, crouch, crawl, or reach above shoulder level; and needed moderate restrictions of activities involving unprotected heights, moving machinery, exposure to marked changes in temperature and humidity, automotive equipment, and exposure to dust, fumes, and gases. Dr. Vogel noted that Ms. Loudenback had unexplained severe pain that was disabling to the extent that it would prevent her from working full time at even a sedentary position. R. at 915-17.

Similarly, on July 2, 2010, Dr. Juanita Albright, Ms. Loudenback's primary care physician, opined that "[a]lthough she has gotten some relief, she has not reached the point where she is able to be gainfully employed," *id.* at 586. Further, on June 10, 2011, she reported that "Ms. Loudenback has found it difficult to participate in a work place setting due to [her] pain and the inability to have complete freedom to move as she needs to alleviate pain." *Id.* at 923.

Despite these opinions, when Dr. A. Dobson, State Agency physician, completed Ms. Loudenback's physical RFC assessment on July 27, 2010, he concluded that she could occasionally lift twenty pounds; frequently lift ten pounds; stand and/or walk about six hours of an eight hour workday; sit about six hours in an eight hour workday; frequently climb a ramp or stairs; never climb a ladder, rope, or scaffold, frequently balance, stoop, and kneel; and occasionally crouch or crawl. He noted that she had no manipulative limitations, and her only environmental limitation was to avoid concentrated exposure to hazards such as machinery and unprotected heights. *Id.* at 716-23. Dr. J. Sands, State Agency physician, affirmed this opinion on September 28, 2010, noting that the medical evidence received did not indicate a significant worsening of any medical conditions. *Id.* at 759.

>Discussing the weight given to Dr. Vogel's opinion, the ALJ noted as follows:
>
>Certain aspects of the doctor's opinion are in fact consistent with the residual functional capacity determined in this decision. However, the evidence as a whole does not support that the claimant would have such extreme limitations in sitting and standing. This medical opinion was given some weight because it is from an acceptable medical source, is from an examining physician with a specialty in neurology, and is from a physician with an extensive treatment history with the claimant. However, it was not given controlling weight because certain aspects are generally inconsistent and not supported by the objective medical evidence as a whole.

*Id.* at 29. Ms. Loudenback argues that the ALJ failed to identify how Dr. Vogel's opinion was "generally inconsistent and not supported by the objective evidence as a whole."

The Court does not see any error in the ALJ's conclusion that Dr. Vogel was not entitled to controlling weight. As noted above, Dr. Dobson offered an opinion that contradicted Dr. Vogel's. Yet the ALJ still incorporated most of Dr. Vogel's restrictions into her RFC assessment, limiting Ms. Loudenback beyond Dr. Dobson's RFC assessment and thereby granting Dr. Vogel significant weight. Contrary to Ms. Loudenback's assertions, the ALJ did not

err by not identifying which aspects of Dr. Vogel's opinion she found inconsistent with the record or by not contacting Dr. Vogel for additional information. An ALJ "is not required to address every piece of evidence or testimony, but must provide some glimpse into her reasoning." *Dixon*, 270 F.3d at 1176. "An ALJ need recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). For reasons discussed below, the Court is satisfied that the ALJ relied on adequate evidence to make her determination and provided well beyond a glimpse into her reasoning.

Ms. Loudenback also argues that the ALJ erred in dismissing Dr. Juanita Albright's opinion. In not granting controlling weight to Dr. Albright's opinion, the ALJ noted that her

> opinions are conclusory and/or provide very little explanation of the evidence relied on in forming that opinion. The doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness. She apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed uncritically to accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints given the objective evidence as a whole. These opinions, therefore, [were] given little weight.

R. at 29. "[M]edical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). Dr. Albright's assessments about Ms. Loudenback's capacity to work were not recorded in the medical evidence; they were made in letters of support of Ms. Loudenback's application for disability benefits. As the Commissioner points out, Dr. Albright did not cite to any test results, examination findings, or other objective evidence to support her statements, and as the Commissioner also points out, Ms. Loudenback

7

did not identify any evidence supporting Dr. Albright's conclusion. The ALJ thus did not err in giving Dr. Albright's opinions little weight.

The Court does not agree with Ms. Loudenback's assertion that the ALJ did not identify medical evidence from other treating or examining physicians that supported the ALJ's decision to not grant controlling weight to Drs. Vogel and Albright. The ALJ thoroughly analyzed the medical record to explain her decision, and she specifically identified other doctors who treated Ms. Loudenback as well as times when Ms. Loudenback's complaints were only partially or not supported by the record. The ALJ discussed at length Ms. Loudenback's six visits with Dr. Sarah Thomas throughout 2010. The ALJ noted Ms. Loudenback's complaints at these visits, which included joint swelling and pain, and Dr. Thomas's diagnoses, which included fibromyalgia, osteoarthritis, and arthralgia. The ALJ also noted that, other than the diagnoses, the exams were mostly unremarkable and Ms. Loudenback demonstrated full range of motion of tested joints without signs of tenderness or swelling.

The ALJ further noted that at a psychological consultative examination with Dr. Bryan London, State Agency physician, on July 10, 2010, Ms. Loudenback alleged that she typically used a cane for walking, but did not have a cane at this exam. The ALJ noted that the record did not establish that a cane is medically necessary. R. at 24. The ALJ noted that at a consultative examination with Dr. Hans Mouser, State Agency physician, on July 10, 2010, Ms. Loudenback was able to get on and off the examination table without difficulties and demonstrated normal gait and posture. She demonstrated a normal range of motion of her joints and portrayed normal muscle strength, with normal grip strength and fine finger skills. *Id.* The ALJ noted that when Dr. David Patterson evaluated Ms. Loudenback for occasional shortness of breath, wheezing, and cough, he diagnosed chronic obstructive pulmonary disease with acute exacerbation, but thought

it was likely due to her smoking, not to a chronic infection or an immune deficiency. The ALJ further noted that when Dr. Albright saw Ms. Loudenback on December 14, 2010, her shortness of breath had resolved. *Id.* at 25.

The ALJ also noted that at a January 6, 2011 visit, Ms. Loudenback reported great left toe pain over the previous two weeks, but had not mentioned this pain to Dr. Thomas at a visit the previous week. *Id.* The ALJ noted in particular Ms. Loudenback's visit to Lisa Gillen, NP-C, on June 8, 2011, due to complaints of diarrhea. The ALJ noted that Ms. Gillen recorded that

> When I entered the room she was stretched out on the examination table, hands behind her head, and smiling. Objectively she did not show signs of distress. Subjectively she reports she is sick and either needs to go on disability [or] be admitted into the hospital to diagnose her condition. . . . Her physical complaints are somewhat disproportionate to the diagnostic findings.

*Id.* at 26. The ALJ noted that a CT scan showed no acute abnormalities of the abdomen or pelvis, and the laboratory results were normal. The ALJ also noted that at a follow-up appointment on June 21, 2011, Ms. Loudenback reported good benefits from her probiotic medication. Because the ALJ relied on well-supported evidence that contradicted Dr. Vogel's and Dr. Albright's opinions, she did not err in not granting them controlling weight, and she built a logical bridge from the evidence to her conclusion.

Ms. Loudenback further argues that the ALJ failed to properly assess her claim under the standards for fibromyalgia. The ALJ identified her fibromyalgia as a severe impairment but found that it did not meet or medically equal any listing. The ALJ considered her fibromyalgia when she evaluated the medical record. Ms. Loudenback fails to show how her fibromyalgia limited her in ways that the ALJ did not already consider. The Court considers her argument waived. *See, e.g., United States v. Tockes*, 530 F.3d 628, 633 (7th Cir. 2008) ("Unsupported and undeveloped arguments . . . are considered waived.").

Finally, Ms. Loudenback argues that the ALJ erred when confronted with new medical evidence, noting that new medical evidence was introduced following the last agency denial upon reconsideration and between the hearing and the decision. Ms. Loudenback does not provide citation for this new medical evidence. She merely states that it chronicled her ongoing abdominal pain issues and gall bladder surgery, and that medical expertise was required to determine the impact of her worsening pain. The ALJ did address this surgery, noting that it suggested that the symptoms were genuine, but that fact was "offset by the fact that the record reflects that the surgeries were generally successful in relieving the symptoms." R. at 27. Ms. Loudenback points to no evidence to show that her pain did, in fact, worsen. Because "[i]t is not this court's responsibility to research and construct the parties' arguments," *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011), the Court considers this argument waived.

The Court is therefore satisfied that the ALJ properly relied on medical evidence in deciding her RFC and built a logical bridge from the evidence to her conclusion.

### B. Credibility Assessment

Ms. Loudenback next argues that the ALJ did not properly evaluate her credibility because the ALJ misrepresented her unemployment insurance benefits and did not analyze her pain.

In examining credibility determinations, the Court will not overturn the ALJ's conclusions "unless they were patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, "[t]he determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)). SSR 96-

7p lists a number of factors that the ALJ must consider in determining the credibility of a claimant. These include, among others, the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; aggravating factors; and medications, treatments, or other remedies that help alleviate the symptoms.

Ms. Loudenback is correct that her unemployment benefits were granted because she was involuntarily unemployed due to a physical disability. R. at 339. The Court agrees that the ALJ should have mentioned this fact when discussing her unemployment benefits. But it is well known that, as the ALJ states, and contrary to Ms. Loudenback's argument, individuals who collect unemployment benefits must actively seek work, indicating that they are ready, willing, and able to work. Ms. Loudenback provides no evidence that shows that because she was collecting unemployment benefits due to a physical disability, she was exempt from this requirement. Regardless, Ms. Loudenback testified that she spent one to two hours a week looking for work, and the Court finds that the ALJ properly took this testimony into account when considering Ms. Loudenback's credibility.

Further, the Court finds that, even if the ALJ did err in considering Ms. Loudenback's unemployment benefits, the ALJ conducted a thorough and extensive review of the required factors when assessing Ms. Loudenback's credibility. Ms. Loudenback asserts that the ALJ failed to consider the intensity of her pain, her long courses of treatment, and her medications. The ALJ addressed these factors. The ALJ noted that Ms. Loudenback's daily activities, and especially her vacations in 2010 and 2011 to Key West, Grand Caymen, Jamaica, the Bahamas, and Puerto Rico, suggested that her alleged symptoms and limitations have, at times, been overstated. The ALJ noted that Ms. Loudenback has taken appropriate medications, but the dosage levels suggested that her symptoms were not particularly serious. The ALJ devoted an

11

entire paragraph to discuss how she accounted for medication side effects such as fatigue and concentration difficulties, noting in particular that Ms. Loudenback takes her pain medication about every four hours, which eases her pain for two to three hours. The ALJ also noted that she considered Ms. Loudenback's course of treatment other than her medications but that treatment did not require additional modification to the RFC. Finally, the ALJ discussed at length how her RFC assessment accounted for precipitating and aggravating factors.

Accordingly, the ALJ built a logical bridge between the evidence and her conclusion, and the Court is satisfied with the reasoning behind her credibility determination.

### C. The ALJ's Step Five Determination

Finally, Ms. Loudenback argues that the ALJ erred at Step Five because she gave an incomplete hypothetical to the vocational expert ("VE") at the hearing. Specifically, she argues that the ALJ gave incomplete hypothetical questions that did not include complete limitations or instruction on issues of concentration, persistence, and pace due to her pain; side effects of medication; or issues of handling and fingering. "[T]he ALJ must question the vocational expert regarding every impairment set forth in the claimant's record to the extent that the impairment is supported by the medical evidence." *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003).

The ALJ adequately accounted for Ms. Loudenback's impairments. In her hypothetical, the ALJ listed all of Ms. Loudenback's credible limitations. The ALJ accounted for the issues of handling and fingering by limiting her RFC to "occasionally finger, that is, fine manipulation." Regarding the medication side effects, the ALJ noted as follows:

> I have accounted for medication side effects such as fatigue and concentration difficulties by limiting the claimant to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements; by limiting the claimant to work that allows one absence per month; by limiting the claimant to work that allows two unscheduled five minute breaks per workweek; by limiting

12

the claimant to only occasional commercial driving; and by limiting the claimant to work that avoids all exposure to unprotected heights and dangerous machinery.

R. at 28.

Ms. Loudenback concedes that the ALJ did limit her RFC based on concentration, persistence, or pace, because the RFC limited her to simple, routine, and repetitive tasks in a work environment free of fast paces production requirements, and to only simple, work related decisions with few, if any, work pace changes. She then faults the ALJ for not referring directly to limitations of concentration, persistence, and pace in the hypothetical. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010) ("[F]or most cases, the ALJ should *refer expressly to limitations on concentration, persistence and pace in the hypothetical* in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do.") (emphasis added). The problem with Ms. Loudenback's argument is that the ALJ found that Ms. Loudenback had moderate difficulties with concentration, persistence, and pace in evaluating whether she met the requirements of paragraph B at Step Three. *See* SSR 96-8p ("The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). This is distinguishable from *O'Conner-Spinner*, in which "[t]he state examiner's RFC determination explicitly noted that there were at least moderate limitations here, and the ALJ agreed with that determination." *O'Connor-Spinner*, 627 F.3d at 620.

In contrast, all of the following were marked "Not Significantly Limited" in Ms. Loudenback's July 2010 mental RFC assessment:

- the ability to remember locations and work-like procedures;
- the ability to understand and remember very short and simple instructions;

13

- the ability to carry out very short and simple instructions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- the ability to sustain an ordinary routine without special supervision;
- the ability to work in coordination with or proximity to others without being distracted by them;
- the ability to make simple work-related decisions; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length or rest periods;

The only "Moderately Limited" marks Ms. Loudenback received were in her abilities to understand and remember detailed instructions, and maintain attention and concentration for extended periods. R. at 613-14. The RFC the ALJ crafted accounts for these limitations in that Ms. Loudenback is limited to simple, routine, and repetitive tasks that do not require her independent judgment, in an environment free of fast paced production, where she can take two unscheduled five-minute breaks twice per week in addition to regularly scheduled breaks and have one absence per month. Ms. Loudenback, misreading the RFC, objects that a break every two hours, is no more than a normal work routine and is incompatible with the mental RFC assessment. She fails to note that the five-minute breaks are in addition to regularly scheduled breaks, and that the State Agency doctor who completed the mental RFC assessment also noted that she had the capacity to function in a work setting. *Id.* at 615. In looking at the ALJ's RFC and the hypothetical given to the VE, it is clear that she accounted for all of Ms. Loudenback's limitations in concentration, persistence, and pace, and that her hypothetical was consistent with her RFC finding.

Ms. Loudenback also asserts that the jobs the VE offered were not responsive to the ALJ's hypothetical. She claims that (1) election clerk was the only job offered in a large quantity, but that an election clerk is not full time work; (2) 223 call out operators and 445 dowel inspectors do not represent a significant number of jobs; (3) the Dictionary of Occupational

14

Titles is obsolete; and (4) the surveillance system monitor is a Homeland Security position that requires a license and training. In support of her argument, she relies only on *McClesky v. Astrue*, in which McClesky's lawyer submitted a letter stating that all security guards and surveillance system monitors require a license from the Department of Homeland Security and training to qualify for the license. The Seventh Circuit questioned the accuracy of this statement and reproached the ALJ for failing to determine whether it was. 606 F. 3d 351, 353 (7th Cir. 2010) (noting that "[t]his is implausible."). The Court finds this argument speculative and unsupported, and considers it waived. *See, e.g.*, *Tockes*, 530 F.3d at 633 ("Unsupported and undeveloped arguments . . . are considered waived.").

Accordingly, the Court finds no error with the ALJ's Step Five determination.

## VI. CONCLUSION

As set forth above, the ALJ in this case satisfied her obligation to articulate the reasons for her decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is **AFFIRMED**.

SO ORDERED: 08/07/2014

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication